*276
 
 OPINION OF THE COURT
 

 Ciparick, J.
 

 The primary question presented by this appeal is whether deference should be afforded to the Department of Health’s interpretation of 10 NYCRR 86-2.30 (i) (27) to require “actual improvement” by a patient before a residential health care facility can receive reimbursement for restorative therapy. We conclude that the Department’s interpretation is not arbitrary and capricious, or irrational, and is therefore entitled to deference.
 

 When a patient is admitted to a residential health care facility (RHCF) or nursing home, his or her physician is required to prepare a written plan of care for therapy services including rehabilitative therapy. A physical therapist then determines what specific type of rehabilitative therapy need be provided. Under the Medicaid reimbursement system, RHCFs are entitled to different rates of reimbursement depending in part upon the type of care their patients require and receive. In order to determine the appropriate reimbursement rate, each patient is placed into one of 16 categories known as resource utilization groups (RUGs)
 
 (see New York State Assn. of Counties v Axelrod,
 
 78 NY2d 158, 162 [1991];
 
 see generally Matter of Jewish Home & Infirmary of Rochester v Commissioner of N.Y. State Dept. of Health,
 
 84 NY2d 252 [1994]). The 16 RUGs are further divided into five hierarchical groups based on the patient’s ability to perform the activities of daily living (ADL).
 

 A qualified registered nurse assessor places each patient into a RUG category by completing a patient review instrument (PRI)
 
 (see
 
 10 NYCRR 86-2.30 [c] [2]). PRIs must be completed for each patient every six months
 
 (see
 
 10 NYCRR 86-2.11 [b] [1]); there is, however, an opportunity to evaluate new patients every three months
 
 (see
 
 10 NYCRR 86-2.11 [b] [2]). Each RUG category is assigned a numerical value based upon the resources necessary to care for that type of patient, with a greater
 
 *277
 
 value assigned to categories that require more resources. The weighted average of a facility’s patients in each category is its case mix index (CMI)
 
 (see
 
 10 NYCRR 86-2.10 [a] [5]). As a result, the direct component*
 
 [1]
 
 of a facility’s Medicaid reimbursement rate
 
 (see
 
 10 NYCRR 86-2.10 [c]) reflects its CMI — the higher the CMI, the higher the reimbursement rate. In other words, a facility that has more patients requiring intensive services will receive a greater reimbursement rate.
 

 Several PRI questions call for documentation qualifiers, which require certain medical record support in order to classify a patient properly. At issue here are documentation qualifiers for maintenance therapy and restorative therapy. To satisfy the documentation qualifier for restorative therapy, the instructions require that “[t]here is positive potential for improved functional status within a short and predictable period of time. Therapy plan of care and progress notes should support that patient has this potential/is improving” (10 NYCRR 86-2.30 [i] [27]). The documentation qualifier for maintenance therapy requires that “[tjherapy is provided to maintain and/or retard deterioration of current functional/ADL status. Therapy plan of care and progress notes should support that patient has no potential for further or any significant improvement” (10 NYCRR 86-2.30 [i] [27]).
 

 The Department also prepared a clarification sheet to assist nursing homes in completing the PRIs. Explaining the docur mentation qualifier for restorative therapy, the clarification sheet states that there “must be a positive potential for significant improvement in a resident’s functional status within a short and predictable period of time. Consequently, the therapy plan of care should support that the resident has this potential and is improving.” The clarification sheet also indicates that for the four consecutive weeks covered by the PRI, restorative therapy must be provided five times a week for a total of at least 2.5 hours.
 

 In May 1999, Elcor submitted its PRI data to the Department. In a subsequent audit to verify the accuracy of Elcor’s PRI results
 
 (see
 
 10 NYCRR 86-2.30 [e] [5]), the Department concluded that 29 of Elcor’s patients had been improperly
 
 *278
 
 classified in the restorative therapy category.
 
 [2]
 
 Although the patients’ physicians had ordered restorative therapy, the audit concluded that because the patients did not respond to therapy or improve, they should have been placed in the maintenance therapy — as opposed to restorative therapy — category. As a result, Elcor’s CMI and corresponding Medicaid reimbursement were reduced. In addition, the Department directed Elcor to contract with an approved outside party to complete its PRIs
 
 (see
 
 10 NYCRR 86-2.30 [f| [1] [ii]).
 

 Elcor brought a CPLR article 78 proceeding to challenge the Department’s determination downgrading the 29 residents from restorative therapy and adjusting the facility’s CMI. Supreme Court found that the requirement that residents demonstrate actual improvement was a regulation that had never been properly promulgated or filed by the Department.
 
 [3]
 
 The court partially granted the petition by annulling the Department’s adjustment to Elcor’s CMI; it also reversed the Department’s directive to require an outside party to complete the PRIs and remitted to the Department for a recalculation of Elcor’s reimbursement rate without using the actual improvement standard. The Appellate Division denied the petition in its entirety, determining that the actual improvement standard was an interpretation of the Department’s regulations and not an unpromulgated rule in violation of the State Administrative Procedure Act (295 AD2d 772, 773 [2002]). The Court also found that the Department’s interpretation of its regulation— requiring a resident to have both the potential for improvement and to actually improve — had a rational basis and was entitled to deference. This Court granted Elcor leave to appeal and we now affirm.
 
 [4]
 

 
 *279
 
 Initially, we reject Elcor’s contention, and Supreme Court’s holding, that the actual improvement standard is an unpromulgated rule being applied without first being adopted through the steps set forth in the State Administrative Procedure Act
 
 (see generally
 
 State Administrative Procedure Act § 202). Specifically exempted from the definition of rule under the State Administrative Procedure Act are “forms and instructions, interpretive statements and statements of general policy which in themselves have no legal effect but are merely explanatory” (State Administrative Procedure Act § 102 [2] [b] [iv]). As we hold today, the actual improvement standard provided by the Department in the clarification sheet is a reasonable interpretation of the restorative therapy documentation qualifier, and thus is not an unpromulgated rule.
 

 Having found the actual improvement standard to be interpretive, we next turn to the question whether such agency interpretation is arbitrary and capricious, or irrational. We reject Elcor’s argument that the actual improvement standard is in violation of a federal mandate that nursing homes “must provide services and activities to attain or maintain the highest practicable physical, mental, and psychosocial well-being of each resident in accordance with a written plan of care” (42
 
 USC
 
 § 1396r [b] [2]).
 

 We note that the Second Circuit found a similar claim to be without merit in
 
 Concourse Rehabilitation & Nursing Ctr., Inc. v Whalen
 
 (249 F3d 136 [2001]), holding that the actual improvement standard was not arbitrary and capricious because the State considered the costs of furnishing restorative therapy as required by the federal statute
 
 (see Concourse,
 
 249 F3d at 146). The court also found no “actual conflict” between the State’s interpretation of its Medicaid plan and federal law for preemption purposes, stating that “[o]ne might as easily presume that the plan will result in more careful monitoring of patient’s progress to ensure that unnecessary rehabilitative services are not being prescribed, or that the actual improvement standard will encourage providers to provide effective treatment”
 
 (Concourse,
 
 249 F3d at 146). We see no reason to differ with the Second Circuit’s holding that the actual improvement standard does not violate Federal Medicaid law.
 

 The
 
 Concourse
 
 court, however, left open the question as to whether such interpretation violates State Medicaid law,
 
 *280
 
 observing that there “exists a colorable claim that the State’s use of the ‘actual improvement’ standard — which appears nowhere in the State plan — conflicts with the relevant qualifiers and therefore violates the State’s plan” (Concourse, 249 F3d at 147). Elcor observes that reimbursement rates “reasonable and adequate to meet the costs which must be incurred by efficiently and economically operated facilities” are required by statute (Public Health Law § 2807 [3]) and that application of the actual improvement standard impermissibly diminishes reimbursement rates. However, the Public Health Law can reasonably be read to support the actual improvement standard imposed by the Department since the statute specifically contemplates “efficiently and economically operated facilities” (Public Health Law § 2807 [3]). Hence, it is not contrary to its purpose to allow reimbursement only for those patients who demonstrate actual improvement.
 

 Elcor finally argues that the Department’s interpretation of its regulation requiring patients to actually improve before reimbursement will be given for restorative therapy is irrational, urging that a plain reading of the restorative therapy qualifier only requires the patient to have the potential for improvement. Elcor maintains the Department’s use of the virgule (or slash) in the regulation — “has this potential/is improving” — means “or.” That the Department’s interpretation might not be the most natural reading of the regulation, or that the regulation could be interpreted in another way, does not make the interpretation irrational. “[T]he commissioner’s interpretation of a regulation is ‘controlling and will not be disturbed in the absence of weighty reasons’ ”
 
 (Matter of Cortlandt Nursing Care Ctr. v Whalen,
 
 46 NY2d 979, 980 [1979], quoting
 
 Matter of Sigety v Ingraham,
 
 29 NY2d 110, 114 [1971]). The Department interprets the qualifier to require the plan of care to demonstrate the patient has potential for improvement at the beginning of therapy and the progress notes to demonstrate actual improvement during therapy. This interpretation does not conflict with the plain language of the regulation, is neither arbitrary and capricious nor irrational and, as a result, should not be disturbed
 
 (see Matter of Marzec v DeBuono,
 
 95 NY2d 262, 266 [2000]).
 

 Elcor’s remaining contentions are likewise without merit.
 

 Accordingly, the order of the Appellate Division should be affirmed, with costs.
 

 
 *281
 
 Chief Judge Kaye and Judges Smith, Rosenblatt, Graffeo and Read concur.
 

 Order affirmed, with costs.
 

 [1]
 

 . A facility’s Medicaid reimbursement rate is made up of four components: direct, indirect, noncomparable and capital
 
 (see
 
 10 NYCRR 86-2.10 [b] [1] [ii]). To determine a facility’s direct component, its allowable costs for, among other things, nursing administration, patient activities, physical therapy and occupational therapy are considered (see 10 NYCRR 86-2.10 [c]).
 

 [2]
 

 . Of the 29 residents, 16 were downgraded from restorative therapy because their last therapy session had been on the last day of the PRI assessment period. Twelve other residents were downgraded because there had been no medical event precipitating therapy and either all of the relevant qualifiers were not met or the reported service was not done at all. An additional resident was downgraded because the PRI indicated the resident received physical therapy when the actual service was occupational therapy.
 

 [3]
 

 . Supreme Court found the requirements that a patient experience a “precipitating event” or that the PRI be completed “other than day of discharge” did not need to be promulgated as regulations if they were not the only factors considered in determining the correct therapy category for a patient. These determinations' are not at issue here.
 

 [4]
 

 . The Department’s argument that it had an appeal as of right to the Appellate Division from the Supreme Court judgment is not properly before this Court because the Department is not aggrieved by the Appellate Divi
 
 *279
 
 sion order, which granted the Department leave to appeal to that Court (see CPLR 5511).