Mercure, J.
Appeal from a judgment of the Supreme Court (McNamara, J.), entered July 24, 2002 in Albany County, which dismissed petitioner’s application, in a proceeding pursuant to CPLR article 78, to, inter alia, review the results of a Department of Health audit for the September 1999 reporting period.
Sylcox Health Care Facilities (hereinafter the facility) formerly operated a state-licensed 190-bed nursing home located in the Town of Newburgh, Orange County that participated in the Medicaid reimbursement program. This appeal arises from a Department of Health audit of the facility’s September 1999 “patient review instruments” (hereinafter PRIs), which contain assessments of the condition of residents in health care facilities. PRIs are used in determining the direct component of a facility’s operating costs and the daily Medicaid rate received by the facility. Based upon the information in the PRIs, a facility’s residents are assigned to Resource Utilization Group (hereinafter RUG) categories. Residents using greater re *689 sources will be placed in a higher RUG category, increasing the facility’s case mix index and the concomitant amount of reimbursement that it receives. As pertinent here, a resident will be placed in a higher RUG category if he or she receives restorative, as opposed to maintenance, therapy.
The results of the audit indicated that several of the facility’s residents had been misclassified. The errors primarily involved the placement of patients receiving maintenance therapy into the restorative therapy category. Accordingly, the Department reduced the facility’s reimbursement rate to reflect the results of the audit. Petitioner thereafter commenced this CPLR article 78 proceeding seeking to annul the audit findings with respect to 12 of its residents. Supreme Court determined that a rational basis existed for the determinations and dismissed the petition. Petitioner appeals.
A patient may be placed in the restorative therapy category only if £‘[t]here is positive potential for improved functional status within a short and predictable period of time. [The] [t]herapy plan of care and progress notes should support that [the] patient has this potential/is improving” (10 NYCRR 86-2.30 [i] [27]).* The Department provides a clarification sheet to nursing homes that interprets 10 NYCRR 86-2.30 (i) (27) as requiring that ££[t]here must be a positive potential for significant improvement in a resident’s functional status within a short and predictable period of time. Consequently, the therapy plan of care should support that the resident has this potential and is improving.” Petitioner challenges this interpretation insofar as it requires a showing of actual improvement, asserting that the regulation requires only that the patient has the potential for improvement. We need only observe on this point that the Court of Appeals recently rejected an identical argument in Matter of Elcor Health Servs. v Novello (100 NY2d 273 [2003]), holding that the Department’s “interpretation does not conflict with the plain language of the regulation, is neither arbitrary and capricious nor irrational and, as a result, should not be disturbed” (id. at 280).
In addition, we reject as meritless petitioner’s assertion that the form used by auditors in determining whether a resident is receiving restorative therapy imposes requirements which “exceed” those contained in the interpretation set forth in the *690 clarification sheet. Specifically, petitioner challenges the requirement that an auditor find that a “patient’s condition is realistically expected to improve significantly within a reasonable (and generally predictable) period of time” on the ground that the words “realistically” and “significantly” are not contained within 10 NYCRR 86-2.30 (i) (27). We conclude, however, that the audit form simply mirrors the interpretation set forth in the clarification sheet and upheld in Matter of Elcor Health Servs. v Novello (supra at 279-280). As such, the form cannot be said to be arbitrary and capricious or irrational.
With respect to the specific PRIs challenged, petitioner asserts that patient progress reports demonstrate that nine of the residents found to be receiving maintenance therapy showed actual improvement and, thus, those residents were properly classified as receiving restorative therapy. Contrary to petitioner’s argument, however, a facility’s patient progress reports are not dispositive as to whether the patients’ restorative therapy resulted in actual improvement. Indeed, to find such progress reports dispositive would defeat the very purpose of performing an audit of a facility’s PRIs, as the Department is authorized to do (see 10 NYCRR 86-2.30 [e] [5]). Here, the auditor relied upon nursing notes, medical records, reported activities of daily living scores, and monthly summaries, as well as patient progress notes, in determining that the nine residents were misclassified. This evidence provided a rational basis for the Department’s determinations with respect to those residents and we will not disturb them here (see generally Matter of Pell v Board of Educ., 34 NY2d 222, 231 [1974]; Matter of Poster v Strough, 299 AD2d 127, 140-143 [2002]). Similarly, the Department’s determination that a resident was misclassified as “clinically complex” is supported by physician notes. To qualify as a physician’s visit, an examination must be personally conducted by a physician, nurse practitioner or physician’s assistant (see 10 NYCRR 86-2.30 [i] [28]). Here, physician’s notes suggest that' the patient was examined only twice in a four-week period, instead of the four times required to deem a patient clinically complex.
Petitioner additionally argues that the Department unreasonably refused to correct a PRI indicating that a resident received restorative occupational therapy, when in fact the resident received restorative physical therapy. Petitioner relies upon 10 NYCRR 86-2.30 (e) (5), which provides, in pertinent part: “Upon completion of a department on-site review . . . the department, in order to ensure accuracy of the patient review form (PRI), shall correct, where necessary, a residential health care facility’s assessment of its patient case mix intensity.” On its face, *691 however, this regulation requires only that the Department correct the facility’s case mix index, using the results of the audit; it does not require correction of PRIs. Instead, it is health care facilities that have the responsibility of correcting mistakes and omissions in their PRIs within five days of the facilities’ receipt of the Department’s written acknowledgment of their PRI submissions (see 10 NYCRR 86-2.30 [e] [4]). Accordingly, we conclude that the Department did not act arbitrarily and capriciously in refusing to correct the PRI at issue. Finally, we have reviewed petitioner’s remaining contentions and determined that they are either unpreserved or meritless.
Cardona, P.J., Crew III, Peters and Lahtinen, JJ., concur. Ordered that the judgment is affirmed, without costs.

 In contrast, a patient is considered to be receiving maintenance therapy if “[tjherapy is provided to maintain and/or retard deterioration of current functional/ADL [activities of daily living] status. [The] [t]herapy plan of care and progress notes should support that [the] patient has no potential for further or any significant improvement” (10 NYCRR 86-2.30 [i] [27]).