McCarthy, J.
Appeal from a judgment of the Supreme Court (Devine, J.), entered June 10, 2011 in Albany County, which dismissed petitioners’ applications, in a consolidated combined proceeding pursuant to CPLR article 78 and action for declaratory judgment, to review determinations of the Department of Health which, among other things, made the requirements for Medicaid reimbursement pursuant to State Plan Amendment No. 09-61 retroactive to September 1, 2009.
The Federal Individuals with Disabilities Education Act (hereinafter IDEA) requires states to ensure, among other things, that preschool children with disabilities are provided a “free appropriate public education” (20 USC § 1400 [d]; see § 1401 [3]). To fulfill its obligations in that regard, respondent State of New York imposed on the counties the responsibility to provide necessary services to preschool children {see Education Law § 4410). After Congress authorized the use of state Medicaid funds to provide reimbursement for medically necessary services rendered pursuant to a disabled child’s individualized education program where all Medicaid coverage requirements were satis *1073 fied, the Legislature enacted Social Services Law § 368-e to address Medicaid reimbursement to counties for services furnished to preschool children with disabilities.[1] To effectuate this School Supportive Health Services Program (hereinafter SSHSP), the State promulgated a State Plan Amendment (hereinafter SPA) to add these services to its state Medicaid program, with approval granted by the Centers for Medicare and Medicaid Services (hereinafter CMS) in June 1995 retroactive to May 1992.
Following an investigation and audit of the SSHSP that uncovered widespread deficiencies in compliance with federal requirements, the State and federal authorities entered into a compliance settlement that required the State to reimburse the federal government approximately $440 million, terminate the existing Medicaid State Plan reimbursement methodology and promulgate a new SPA that would implement a methodology consistent with federal requirements. The compliance agreement signed in late July 2009 provided that, effective July 1, 2009, federal funds would only be available for SSHSP under the terms of a revised SPA that had to be approved by CMS. Pursuant to the agreement, the State submitted a proposed SPA to CMS in September 2009, requesting an effective date of July 1, 2009. CMS requested additional information and advised the State that, because notice of the proposed changes had not been published until August 26, 2009 and the notice listed September 1, 2009 as the effective date, the SPA could not be effective as of July 1, 2009. On April 26, 2010, CMS approved SPA No. 09-61 with an effective date of September 1, 2009.
Meanwhile, on July 30, 2009, the State Education Department (hereinafter SED) issued Medicaid Alert No. 09-03 to inform SSHSP providers of the settlement agreement. The alert advised providers that claims for services rendered after July 1, 2009 could not be submitted until a new SPA was developed, but that providers should maintain Medicaid documentation for new claims in accordance with the then-current Medicaid handbook. On May 17, 2010, SED issued Medicaid Alert No. 10-1, informing providers that SPA No. 09-61 had been approved and that it required a new reimbursement methodology. The alert informed providers that “Medicaid billings for these services provided on or after September 1, 2009 will resume once the necessary changes are in place and providers have met all requirements for compliance with the new SPA.” Additionally, *1074 the alert stated that further information would be forthcoming, and that SED and the Department of Health (hereinafter DOH) would conduct training on policy and reimbursement changes. Petitioners — certain counties that provide SSHSP services and their commissioners of health — sent their employees to those trainings, where they allege that they first became aware that the counties would not be reimbursed for services provided in July 2009 and August 2009 and that new procedures and documentation would be required for claims for services performed after September 1, 2009.
Petitioners commenced hybrid CPLR article 78 proceedings and declaratory judgment actions, which Supreme Court consolidated. The court dismissed the petitions. Petitioners appeal.
Respondents waived their argument that petitioners lack capacity to sue them, as this affirmative defense was not raised in the answers or a pre-answer motion to dismiss (see CPLR 3211 [a] [3]; [e]; Bicounty Brokerage Corp. v Burlington Ins. Co., 88 AD3d 833, 834 [2011]; Security Pac. Natl. Bank v Evans, 31 AD3d 278, 280 [2006], appeal dismissed 8 NY3d 837 [2007]).
Petitioners’ proceedings were untimely to the extent that they challenge the unavailability of reimbursement for services provided in July 2009 and August 2009. SED issued Medicaid Alert No. 10-1 on May 17, 2010, informing providers that SPA No. 09-61 had been approved and directing them to the SED website to view a copy of the SPA. The alert stated that billing would resume for services “provided on or after September 1, 2009,” indicating that reimbursement would not be available for services provided in July 2009 or August 2009. State law provides that reimbursement through SSHSP is available only when “all necessary approvals under federal law and regulation have been obtained to receive federal financial participation in the costs of health care services provided” (Social Services Law § 368-e [2]). The SPA itself stated that it had an effective date of September 1, 2009, putting providers on notice that no SPA was in effect for July or August 2009. As approval had not been granted for federal funding during that time period, petitioners were on notice as of May 17, 2010 that respondents would not be providing reimbursement for those two months. Because petitioners did not commence these proceedings until more than four months after the May 2010 alert, that portion of their challenge is untimely.
The May 2010 alert stated that more information would be forthcoming on the requirements for compliance and documentation. Petitioners commenced the proceedings within four *1075 months of the training sessions where they allegedly received this information for the first time. Therefore, the portion of petitioners’ applications challenging the retroactive effect of the new documentation standards is timely.
Respondents’ determination to apply the new Medicaid requirements retroactively to September 1, 2009 was not arbitrary or capricious. CMS, the federal agency responsible for administering the Medicaid program, informed respondents that September 1, 2009 was the appropriate effective date for the new SPA, consistent with federal regulations (see 42 CFR 430.20).[2] 3****If SPA No. 09-61 was not given retroactive effect, no SPA would have been in effect from June 30, 2009 until April 26, 2010, leaving no Medicaid reimbursement for SSHSP providers during that much lengthier time period. Social Services Law § 368-e (2) provides that reimbursement for SSHSP providers “shall be made in such form and manner, at such times, and for such periods as [DOH] may require,” and that the reimbursement provisions “shall be of no force and effect” unless all necessary federal approvals were “obtained to receive federal financial participation.”[3] The compliance agreement also required respondents to implement a new methodology consistent with federal requirements. Federal funding would have been denied if respondents had not applied the new methodology to claims for services rendered after execution of the compliance agreement. Indeed, the compliance agreement was necessary because the federal government’s investigation and audit revealed a lack of compliance with Medicaid rules by SSHSP providers under the former methodology, primarily a lack of proper documentation for services to verify that reimbursement was appropriate. To obtain federal Medicaid reimbursement, respondents were required by CMS to impose a retroactive September 1, 2009 effective date for implementation of the documentation standards. Complying with requirements imposed by the federal government cannot be considered arbitrary or capricious.
*1076 Petitioners’ constitutional argument — that respondents’ failure to provide Medicaid reimbursement for July and August 2009 violated NY Constitution article XVU’s requirement that the State provide for the needy — was not included in the petitions, so it is not properly before us (see Matter of Association for Community Living, Inc. v New York State Off. of Mental Health, 92 AD3d 1066, 1068 [2012], appeal dismissed 19 NY3d 874 [2012]). The parties’ remaining contentions have been reviewed and are unpersuasive.
Rose, J.E, Spain, Kavanagh and Stein, JJ., concur. Ordered that the judgment is affirmed, without costs.

. Counties can also obtain partial reimbursement for the cost of services for disabled children, including children who are not eligible for Medicaid, from state education funds and federal IDEA funds. Those sources of funding are not at issue here.

. Similarly, the SPA containing the prior methodology was approved in June 1995, but made retroactive to May 1992.

. We acknowledge that petitioners complied with SED’s directive to maintain documentation as required under the then-current Medicaid handbook and are, they allege, unable to now provide the necessary documentation under the new standards because they were unaware of those standards at the time when the documentation was created. Despite the apparent unfairness to petitioners, the Legislature set forth the requirements for reimbursement without regard to fault (see Social Services Law § 368-e [2]; Matter of Spano v Novello, 13 AD3d 1006, 1008-1009 [2004], lv denied 4 NY3d 819 [2005]).