McCarthy, J.
Appeal from a judgment of the Supreme Court (Gilpatric, J.), entered September 14, 2012 in Albany County, which dismissed petitioners’ application, in a combined proceeding pursuant to CPLR article 78 and action for declaratory judgment, to review determinations of the Department of Health amending and clarifying the Medicaid reimbursement methodology for school supportive health services.
As permitted by federal law (see 42 USC § 1396b [c]), New York enacted a statute to govern Medicaid reimbursement for school supportive health services program (hereinafter SSHSP) assistance that school districts provide to children, ages 5 to 21, who have disabilities (see Social Services Law § 363-d). After a federal investigation and audit of SSHSP providers in New York revealed deficient compliance with Medicaid requirements, in July 2009 the federal government and respondent State of New York entered into an SSHSP compliance agreement that, among other things, required the State to terminate its existing Medicaid reimbursement methodology and propose a new State Plan Amendment (hereinafter SPA) to implement a methodology consistent with federal requirements (see Matter of Tomarken v State of New York, 100 AD3d 1072, 1073 [2012]). The SPA then had to be approved by the Centers for Medicare and Medicaid Services. The State Education Department (hereinafter SED) notified school districts of a freeze on Medicaid reimbursement claims, but advised them to maintain documentation in accordance with Medicaid policy.
In June 2010, SED posted a set of questions and answers (hereinafter Q & As) on its Medicaid in Education website. As relevant here, question Nos. 24 and 25 addressed documentation requirements and stated that, to submit claims for SSHSP *1232 Medicaid reimbursement, providers must make available upon request, among other things, session notes of each student encounter, and described what must be included in a session note. In August 2010, the Centers for Medicare and Medicaid Services approved the SPA with an effective date of September 1, 2009. SED issued a Medicaid alert to notify all SSHSP providers that the SPA had been approved, a copy of it was made available on the Medicaid in Education website, and it required a new methodology and clarified documentation requirements. The alert also stated that billings — for the period starting September 1, 2009 — would resume once necessary changes were in place.
In December 2010, SED posted another set of Q & As. Question Nos. 100, 102 and 106 concerned session notes and billing, stating that session notes must be created at or about the time of the completion of a session, a separate session note is required for each student in a group therapy setting and Medicaid reimbursement requests should not be submitted for services if the required supporting documentation is not available. Question No. 75 stated that, as providers may only bill for services included in a student’s individualized education program (hereinafter IEP), if an IEP calls for group therapy but the student is provided with individual therapy due to, for example, the absence of other students from the group, Medicaid reimbursement is not available. Question No. 77 states that for a make-up session to be reimbursable, it must occur within the same week that the original session was scheduled.
In April 2011, petitioners — four school districts that deliver SSHSP services as enrolled Medicaid providers — commenced this combined CPLR article 78 proceeding and declaratory judgment action. In their second amended petition, petitioners alleged that question Nos. 24 and 25 in the June 2010 Q & As and question Nos. 75, 77, 100, 102 and 106 in the December 2010 Q & As were issued in violation of the State Administrative Procedure Act and were arbitrary and capricious in substance and in their retroactive application. Supreme Court dismissed the petition. Petitioners Board of Education of the Kiryas Joel Village Union Free School District, Board of Education of the Washingtonville Central School District and Board of Education of the East Ramapo Central School District (hereinafter collectively referred to as petitioners) appeal.
Petitioners’ proceeding was timely commenced, including the portion challenging some of the June 2010 Q & As. The four-month statute of limitations for a CPLR article 78 proceeding begins to run when a determination “becomes final and binding *1233 upon [a] petitioner” (CPLR 217 [1]), meaning that “the agency-must have reached a definitive position on the issue that inflicts actual, concrete injury” (Matter of Best Payphones, Inc. v Department of Info. Tech. & Telecom, of City of N.Y., 5 NY3d 30, 34 [2005]; see Matter of Dugan v Liggan, 90 AD3d 1445, 1446-1447 [2011]). If an agency creates any ambiguity as to whether its decision is final and binding, courts should resolve that ambiguity against the agency and reach the merits of the controversy (see Matter of Carter v State of N.Y., Exec. Dept., Div. of Parole, 95 NY2d 267, 270 [2000]; Matter of Catskill Regional Off-Track Betting Corp. v New York State Racing & Wagering Bd., 56 AD3d 1027, 1029 [2008]). The June 2010 Q & As addressed session notes, but it was not until the December 2010 Q & As that SED clarified that session notes could not be altered or updated if they did not originally contain all of the required information, thereby clearly informing petitioners that they could not submit bills for Medicaid reimbursement for certain services that had already been provided. Additionally, the June 2010 Q & As did not inflict any actual injury because petitioners remained subject to a billing freeze until April 2011. Thus, Supreme Court properly held that the petition was timely and should be resolved on the merits.
The documentation and reimbursement eligibility requirements reflected in the challenged Q & As were not required to be promulgated as rules under the State Administrative Procedure Act. For purposes of rule-making notice and filing requirements (see State Administrative Procedure Act § 202), a rule is defined as “the whole or part of each agency statement, regulation or code of general applicability that implements or applies law, or prescribes . . . the procedure or practice requirements of any agency, including the amendment, suspension or repeal thereof” (State Administrative Procedure Act § 102 [2] [a]). Expressly excluded from the definition are “rules concerning the internal management of the agency which do not directly and significantly affect the rights of or procedures or practices available to the public” (State Administrative Procedure Act § 102 [2] [b] [i]), and “forms and instructions, interpretive statements and statements of general policy which in themselves have no legal effect but are merely explanatory” (State Administrative Procedure Act § 102 [2] [b] [iv]). The Court of Appeals has recognized “that there is no clear bright line between a ‘rule’ or ‘regulation’ and an interpretative policy” (Cubas v Martinez, 8 NY3d 611, 621 [2007]). Courts have previously found administrative directives to be interpretive statements when they rely on and constitute reasonable interpretations of existing regulations or statutes, or merely address the *1234 type of documentation needed to establish whether a predetermined test of eligibility has been met (see id. at 621; Matter of Elcor Health Servs. v Novello, 100 NY2d 273, 279 [2003]; Lewis v New York State Dept. of Civ. Serv., 60 AD3d 216, 224 [2009], affd 13 NY3d 358 [2009]).
Social Services Law § 368-d (2) provides that “[c]laims for payment under this section shall be made in such form and manner, at such times, and for such periods as the [Department [of Health] may require.” To be eligible to receive Medicaid reimbursement at all, petitioners were required to enroll in the Medicaid program as providers, which in turn obligated them “to prepare and maintain contemporaneous records demonstrating [their] right to receive payment under the medical assistance program” and to furnish those records upon request (18 NYCRR 504.3 [a]). Question Nos. 24 and 25 make clear that the contemplated contemporaneous records are session notes, and question Nos. 100, 102 and 106 provide further detail regarding the nature and particulars of those session notes. The billing guidance in the Q & As interprets the regulation requiring that providers of Medicaid services support their billing requests with contemporaneous documentation describing the service that was provided and demonstrating that the claim is legitimate (see 18 NYCRR 504.3 [a]).[1]
One regulation provides that Medicaid service providers will only submit claims for services that are “medically necessary” or otherwise authorized by the Social Services Law (18 NYCRR 504.3 [e]). Question Nos. 75 and 77 explain that SSHSP providers may generally only bill for services that are included in a student’s IEP; specifically, individual sessions are not reimbursable if an IEP only provides for group therapy, and make-up sessions in a subsequent week are not reimbursable when the IEP provides for only a certain number of sessions in each week. These Q & As are merely interpretations or clarifications of what is considered “medically necessary,” namely, only services included in the IEP As the Q & As were interpretive statements of existing regulations requiring contemporaneous records and claims for only medically necessary services, these documentation and eligibility requirements were exempt from the definition of rules under the State Administrative Procedure Act and its rule-making requirements (see State Administrative Procedure Act § 102 [2] [b] [iv]; Cubas v Martinez, 8 NY3d at 621; *1235 Matter of Pharmacists Socy. of State of N.Y., Inc. v Pataki, 58 AD3d 924, 926-927 [2009], lv denied 12 NY3d 710 [2009]; compare Matter of HD Servs., LLC v New York State Comptroller, 51 AD3d 1236, 1237-1238 [2008]).
The Q & As regarding documentation requirements are not arbitrary or capricious either in their retroactive application or in substance. Initially, this Court has recently held that “the determination to apply the new Medicaid requirements retroactively to September 1, 2009 was not arbitrary or capricious,” as the State was merely “[complying with requirements imposed by the federal government” in fixing the effective date (Matter of Tomarken v State of New York, 100 AD3d at 1075). Regarding the substance of the Q & As, petitioners allege that they were previously instructed that only quarterly progress notes were required as proof, rather than session notes, and their previous claims were paid and withstood audits when supported by that documentation. While an agency’s change from a previous position or precedent without adequate explanation will be considered arbitrary and capricious (see Matter of Canfora v Goldman Sachs Group, Inc., 93 AD3d 988, 989 [2012]; Matter of Huff v Department of Corrections, 52 AD3d 1003, 1004 [2008]), respondents adequately set forth a rational explanation for the more stringent documentation requirements. After the federal investigation and audit, “[flederal funding would have been denied if respondents had not applied the new methodology to claims for services rendered after execution of the compliance agreement. Indeed, the compliance agreement was necessary because the federal government’s investigation and audit revealed a lack of compliance with Medicaid rules by SSHSP providers under the former methodology, primarily a lack of proper documentation for services to verify that reimbursement was appropriate” (Matter ofTomarken v State of New York, 100 AD3d at 1075).[2] It is rational to require specific session notes for each student to document that the SSHSP provider delivered the necessary services to an eligible student on the particular date noted, thereby establishing that reimbursement is appropriate.
The Q & As regarding billing for group and make-up therapy sessions are also not arbitrary or capricious. Question No. 75 *1236 explains that the definition of group means more than one student, so a student did not receive group therapy if he or she was the only student present for the therapy session. If the student’s IEP only includes group therapy, there is no proof of medical necessity for an individual therapy session. Accordingly, question No. 75 contains a rational explanation for the prohibition on billing for group therapy when only one student shows up. Although an SSHSP provider may not be able to anticipate when other students in a group may be ill or otherwise unable to participate in a group therapy session, thereby placing the provider in an untenable position of being unable to provide the service included in the present student’s IEp the potential for such a situation does not render irrational the overarching guideline set forth in question No. 75.
Similarly, question No. 77 requires strict adherence to the services contained in the IEP and only permits reimbursement for a certain number of sessions during the time period prescribed in the IEP Thus, any make-up sessions must fall within the prescribed period (i.e., the same week) or the claim for reimbursement will include services that were provided in a manner that is inconsistent with the IEP While this may seem unfair under certain scenarios, such as if a student misses a session on a Friday and it cannot be made up during that same week, requiring strict adherence to the IEP as proof of medical necessity is a rational way to interpret the Medicaid requirements. As the agency’s interpretations in the Q & As were not irrational, arbitrary or capricious, we affirm Supreme Court’s dismissal of the petition (see Matter of Elcor Health Servs. v Novello, 100 NY2d at 280; Matter of Taker v Novello, 278 AD2d 809, 810 [2000], lv denied 96 NY2d 712 [2001]).
Rose, J.P., Stein and Garry, JJ., concur. Ordered that the judgment is affirmed, without costs.

. Petitioners’ argument that the Q & As are inconsistent with prior guidance and requirements for payment does not affect whether the Q & As are rules subject to the State Administrative Procedure Act but, rather, whether the Q & As are arbitrary and capricious, as discussed below.

. We previously rejected the argument that a retroactive change in documentation requirements is arbitrary or capricious because it is unfair; although petitioners cannot now create the necessary contemporaneous records and they were unaware of the requirements at the time the services were provided, the new requirements for reimbursement are rational and were established without regard to fault (see Matter of Tomarken v State of New York, 100 AD3d at 1075 n 3).