Matter of Blue v Zucker (2021 NY Slip Op 01924)





Matter of Blue v Zucker


2021 NY Slip Op 01924


Decided on March 26, 2021


Appellate Division, Fourth Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided on March 26, 2021
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Fourth Judicial Department

PRESENT: CENTRA, J.P., PERADOTTO, LINDLEY, NEMOYER, AND TROUTMAN, JJ.


990.1 TP 20-00512

[*1]IN THE MATTER OF MICHAELJON BLUE, PETITIONER-PLAINTIFF,
v
HOWARD A. ZUCKER, COMMISSIONER, NEW YORK STATE DEPARTMENT OF HEALTH, AND THE SHORE WINDS, LLC, RESPONDENTS-DEFENDANTS. 






EMPIRE JUSTICE CENTER, ROCHESTER (FIONA WOLFE OF COUNSEL), LEGAL ASSISTANCE OF WESTERN NEW YORK, INC., AND DISABILITY RIGHTS NEW YORK, FOR PETITIONER-PLAINTIFF.
LETITIA JAMES, ATTORNEY GENERAL, ALBANY (BRIAN D. GINSBERG OF COUNSEL), FOR RESPONDENT-DEFENDANT HOWARD A. ZUCKER, COMMISSIONER, NEW YORK STATE DEPARTMENT OF HEALTH. 
LAW OFFICES OF PULLANO & FARROW, ROCHESTER (MICHAEL P. SCOTT-KRISTANSEN OF COUNSEL), FOR RESPONDENT-DEFENDANT THE SHORE WINDS, LLC.


 Proceeding pursuant to CPLR article 78 and declaratory judgment action (transferred to the Appellate Division of the Supreme Court in the Fourth Judicial Department by order of the Supreme Court, Monroe County [Gail Donofrio, J.], entered February 26, 2020) to review a determination authorizing the discharge of petitioner-plaintiff from respondent-defendant The Shore Winds, LLC. 
It is hereby ORDERED that the order insofar as it transferred that part of the action/proceeding seeking declaratory relief is unanimously vacated without costs, the declaratory judgment action and CPLR article 78 proceeding are severed, the declaratory judgment action is remitted to Supreme Court, Monroe County, for further proceedings, and the determination is confirmed without costs.
Memorandum: Petitioner-plaintiff (petitioner) commenced this hybrid CPLR article 78 proceeding and declaratory judgment action seeking, inter alia, to annul a determination permitting the discharge and involuntary transfer of petitioner from respondent-defendant The Shore Winds, LLC (Shore Winds) nursing home to another nursing home. In the determination made following a hearing (see 10 NYCRR 415.3 [i] [2]), the Administrative Law Judge (ALJ) concluded that Shore Winds met its burden of establishing that the discharge and transfer was necessary on the ground of failure to pay and that the discharge plan was appropriate (see 10 NYCRR 415.3 [i] [2] [iii] [b]).
Preliminarily, contrary to the contentions of petitioner and respondent-defendant Howard A. Zucker, Commissioner, New York State Department of Health (DOH), Supreme Court properly transferred the CPLR article 78 proceeding to this Court pursuant to CPLR 7804 (g) inasmuch as the petition-complaint (petition) raises an issue "whether a determination made as a result of a hearing held, and at which evidence was taken, pursuant to direction by law is, on the entire record, supported by substantial evidence" (CPLR 7803 [4]; see also Matter of Hosmer v New York State Off. of Children & Family Servs., 289 AD2d 1042, 1042 [4th Dept 2001]; Matter of McKins v Coughlin, 142 AD2d 987, 987 [4th Dept 1988], lv denied 74 NY2d 603 [1989]). In particular, petitioner challenges the determination following a quasi-judicial hearing conducted [*2]pursuant to direction by law at which evidence was taken (see 10 NYCRR 415.3 [i] [2]) on the grounds that the ALJ disregarded evidence that Shore Winds failed to properly inform her of charges during her stay and that the ALJ's conclusion regarding the adequacy of the discharge plan was not supported by the hearing testimony (see Matter of Beechwood Sanitarium v DeBuono, 247 AD2d 928, 928-929 [4th Dept 1998]). Contrary to petitioner's assertion, our task with respect to those allegations is to determine whether the ALJ's conclusion that Shore Winds met its burden at the hearing is supported by substantial evidence (see id.). "This is so even where, as here, the relevant facts are largely undisputed, [inasmuch] as 'substantial evidence consists of proof within the whole record of such quality and quantity as to generate conviction in and persuade a fair and detached fact finder that, from that proof as a premise, a conclusion or ultimate fact may be extracted reasonably—probatively and logically' " (Matter of Johnson v New York City Tr. Auth., 182 AD3d 970, 972 [3d Dept 2020], quoting 300 Gramatan Ave. Assoc. v State Div. of Human Rights, 45 NY2d 176, 181 [1978]; see Matter of Burnett v Borden Chem. Div. Borden, 35 NY2d 766, 767 [1974]). Therefore, "regardless of the terms used by petitioner [in the petition], a substantial evidence issue has been raised" (Matter of Bulmahn v New York State Off. of Medicaid Inspector Gen., 106 AD3d 1504, 1505 [4th Dept 2013], lv denied 22 NY3d 860 [2014] [internal quotation marks omitted]). While petitioner additionally raises a question whether the ALJ's interpretation of a regulation is arbitrary and capricious (see CPLR 7803 [3]; Matter of Elcor Health Servs. v Novello, 100 NY2d 273, 276, 279-280 [2003]), the court still properly transferred the entire CPLR article 78 proceeding to this Court inasmuch as "the 'petition raises a substantial evidence question, and the remaining points made by petitioner are not objections that could have terminated the proceeding within the meaning of CPLR 7804 (g)' " (Matter of Green v Sticht, 124 AD3d 1338, 1338 [4th Dept 2015], lv denied 26 NY3d 906 [2015]; see Matter of OTR Media Group, Inc. v Board of Stds. & Appeals of the City of N.Y., 132 AD3d 607, 607-608 [1st Dept 2015]; see generally Matter of Bernier v Shah, 120 AD3d 1572, 1572-1573 [4th Dept 2014]; Matter of Hoch v New York State Dept. of Health, 1 AD3d 994, 994 [4th Dept 2003]).
Nonetheless, although petitioner also contends that she is entitled to declaratory relief, we do not "have jurisdiction to consider the declaratory judgment action as part of this otherwise properly transferred CPLR article 78 proceeding" (Matter of Cookhorne v Fischer, 104 AD3d 1197, 1197 [4th Dept 2013]). The transfer of a declaratory judgment action to this Court is not authorized by CPLR 7804 (g) (see Matter of Applegate v Heath, 88 AD3d 699, 700 [2d Dept 2011]; Matter of Coleman v Town of Eastchester, 70 AD3d 940, 941 [2d Dept 2010]) and we "lack[] jurisdiction to consider a declaratory judgment action in the absence of a proper appeal from a court order or judgment" (Matter of Cram v Town of Geneva, 182 AD2d 1102, 1102-1103 [4th Dept 1992]). We therefore vacate the order insofar as it transferred the declaratory judgment action, sever the declaratory judgment action and CPLR article 78 proceeding, and remit the declaratory judgment action to Supreme Court for further proceedings (see Cookhorne, 104 AD3d at 1197-1198).
With respect to the merits of the CPLR article 78 proceeding, petitioner contends that the ALJ erred in concluding that Shore Winds met its burden of establishing that the discharge and transfer was necessary on the ground of failure to pay. We reject that contention.
As relevant here, the discharge and transfer of a resident from a nursing home is "permissible when the resident has failed, after reasonable and appropriate notice, to pay for (or to have paid under Medicare, Medicaid or third-party insurance) a stay at the facility" (10 NYCRR 415.3 [i] [1] [i] [b]). "Such transfer or discharge shall be permissible only if a charge is not in dispute, no appeal of a denial of benefits is pending, or funds for payment are actually available and the resident refuses to cooperate with the facility in obtaining the funds" (id.). The ALJ interpreted the regulation as permitting discharge for nonpayment where, after the requisite notice, there remains an unpaid charge (or charges) not in dispute, even if there are other charges that happen to be in dispute. "[C]ourts must defer to an administrative agency's rational interpretation of its own regulations in its area of expertise" (Matter of Peckham v Calogero, 12 NY3d 424, 431 [2009]), and thus "an agency's interpretation of its own regulations will not be disturbed where it is not irrational or unreasonable" (Matter of J.C. Smith, Inc. v New York State Dept. of Economic Dev., 163 AD3d 1517, 1519 [4th Dept 2018], lv denied 32 NY3d 1191 [2019] [internal quotation marks omitted]; see Elcor Health Servs., 100 NY2d at 276, 279-280). Here, contrary to petitioner's assertion, inasmuch as the regulation provides a disjunctive list of three limited situations in which a nursing home is permitted to discharge a resident for nonpayment, [*3]including where "a charge"—in the singular—"is not in dispute" (10 NYCRR 415.3 [i] [1] [i] [b]; see generally Matter of Gerald R.M., 12 AD3d 1192, 1194 [4th Dept 2004]), we conclude that the ALJ's "interpretation does not conflict with the plain language of the regulation, is neither arbitrary and capricious nor irrational and, as a result, should not be disturbed" (Elcor Health Servs., 100 NY2d at 280).
Contrary to petitioner's further assertion, there is substantial evidence of undisputed charges of approximately $6,000 for net available monthly income (NAMI) and $3,500 for excess resources during the period when Medicaid was effective, which petitioner failed to pay despite having reasonable and appropriate notice (see 10 NYCRR 415.3 [i] [1] [i] [b]). First, with respect to notice, the regulations make nursing homes responsible for "inform[ing] each resident verbally and in writing before, or at the time of admission, and periodically when changes occur during the resident's stay, of services available in the facility and of charges for those services, including any charges for services not covered by sources of third party payment or by the facility's basic per diem rate" (10 NYCRR 415.3 [h] [2] [iii]). Here, the ALJ properly concluded that the admission agreement signed by petitioner's representative on her behalf constituted an enforceable contract that adequately informed petitioner of the relevant charges. In the admission agreement, petitioner agreed to pay the daily basic charge as set by the program under which she had coverage, e.g., Medicaid, and she further agreed to "remain personally liable for any cost of care determined not covered by any third-party payor including . . . Medicaid." The fact that the admission agreement did not specify the exact dollar amount of the daily basic charge, which was set by the program under which petitioner had coverage, does not render the admission agreement so indefinite as to be unenforceable (see Seton Health at Schuyler Ridge Residential Health Care v Dziuba, 127 AD3d 1297, 1298 [3d Dept 2015]). " '[A] price term is not necessarily indefinite because the agreement fails to specify a dollar figure, or leaves fixing the amount for the future, or contains no computational formula' " (id., quoting Cobble Hill Nursing Home v Henry & Warren Corp., 74 NY2d 475, 483 [1989], cert denied 498 US 816 [1990]). "[W]here at the time of the agreement the parties have manifested their intent to be bound, a price term will be sufficiently definite if it can be defined by reference to, among other things, 'an objective extrinsic event, condition or standard,' or by the subsequent conduct of the parties" (id. at 1299). Here, the price terms could be defined by reference to the Medicaid rates as determined by that program based on petitioner's eligibility and circumstances, and by any invoices sent to petitioner's representative (see id.). Consistent with the information provided in the admission agreement about petitioner's responsibility for charges not covered under Medicaid, Shore Winds' pre-discharge statements that were periodically issued to petitioner's representative reflected that petitioner owed, inter alia, monthly NAMI charges and the one-time excess resources charge from the effective date of her Medicaid coverage. Even assuming, arguendo, that the record establishes that petitioner had adequate notice of the NAMI and excess resources charges only, we conclude that the ALJ properly determined, based on a rational interpretation of the regulation, that those charges alone would be sufficient to establish valid grounds for discharge for nonpayment (see 10 NYCRR 415.3 [i] [1] [i] [b]). Second, with respect to the status of those charges, the record of the hearing establishes that such charges were not in dispute and remained unpaid (see id.). Based on the foregoing, we conclude that there is substantial evidence supporting the determination that Shore Winds met its burden of establishing that the discharge and transfer was necessary on the ground of failure to pay (see 10 NYCRR 415.3 [i] [1] [i] [b]; [i] [2] [iii] [b]).
Petitioner further contends that the ALJ erred in concluding that Shore Winds met its burden of establishing that the discharge plan was appropriate. We also reject that contention.
Shore Winds had the burden of establishing that the discharge plan for petitioner was appropriate (see 10 NYCRR 415.3 [i] [2] [iii] [b]). In doing so, Shore Winds had to establish, in relevant part, that it "provide[d] sufficient preparation and orientation to [petitioner] to ensure safe and orderly transfer or discharge from the facility, in the form of a discharge plan which addresse[d] the medical needs of [petitioner] and how these will be met after discharge" (10 NYCRR 415.3 [i] [1] [vi]).
Contrary to petitioner's assertion, we conclude that there is substantial evidence supporting the ALJ's conclusion that the discharge plan addressed petitioner's medical needs. Such evidence includes the professional opinions of Shore Winds' staff that the new nursing home would be a good fit for petitioner, the new nursing home's acceptance of petitioner after [*4]reviewing her medical records and history, and the testimony of Shore Winds' social worker regarding the appropriateness of the discharge to that location, her consultation with Shore Winds' staff about the discharge, and her representation that there was no difference between Shore Winds and the new nursing home with respect to the specialist and physician care that each could arrange for petitioner (see id.). We decline petitioner's request to, in effect, weigh the evidence inasmuch as, "in making a substantial evidence determination, we do not weigh the evidence or assess the credibility of the testimony presented" (Matter of Klimov v New York State Div. of Human Rights, 150 AD3d 1677, 1678 [4th Dept 2017] [internal quotation marks omitted]). Moreover, we reject petitioner's related contention that the ALJ improperly shifted the burden on the medical needs issue. The ALJ concluded only that petitioner failed to refute the evidence presented by Shore Winds that professionals considered the new nursing home a medically-appropriate facility for petitioner. The ALJ's conclusion was not in error given that Shore Winds had the burden at the hearing and petitioner, in response, was entitled to refute any testimony or evidence presented (see 10 NYCRR 415.3 [i] [2] [ii] [e]).
Contrary to petitioner's further contention, there is substantial evidence to support the conclusion that Shore Winds provided petitioner with sufficient preparation and orientation to ensure a safe and orderly transfer. The discharge plan provided that Shore Winds would arrange for the appropriate transportation to the new nursing home and, if needed, for a staff member to accompany petitioner. The discharge plan further provided a plan for packing and transporting petitioner's personal belongings, and obtaining new prescription medications upon arrival at the new nursing home. In terms of orientation at the new nursing home—a facility with which Shore Winds knew petitioner was unfamiliar—Shore Winds' social worker explained that there would be a discussion between a nurse at Shore Winds and a nurse at the new nursing home and that she would be in contact with the social worker at the new nursing home, who would be able to answer any questions for petitioner. Shore Winds' social worker further explained that Shore Winds would provide a staff member to accompany petitioner to help her transition and that the new nursing home, based on information provided by Shore Winds, would have petitioner's medications ready before she arrived. Thus, there is substantial evidence that Shore Winds prepared and oriented petitioner for a safe and orderly transfer (see 10 NYCRR 415.3 [i] [1] [vi]).
Entered: March 26, 2021
Mark W. Bennett
Clerk of the Court