OPINION OF THE COURT
 

 Wesley, J.
 

 Defendants Shung Moo Louie and Shung Mon Louie own shares in a cooperative apartment in Manhattan. In 1995, they entered into a three-year sublease agreement with plaintiff Henry Jarecki. The sublease included a rider that, among other things, contained an option to purchase the apartment for $600,000, subject to the approval of the cooperative board.
 

 In February 1998, plaintiff notified defendants that he was exercising his option. Thereafter, the parties executed a contract of sale, which included an anti-assignment provision and a standard merger clause,
 
 *
 
 and reiterated that plaintiff’s right to purchase was subject to approval by the cooperative board. In May 1998, the cooperative board rejected plaintiffs application to purchase defendants’ shares; plaintiff did not challenge the determination. Pursuant to the contract of sale, the board’s denial of plaintiffs purchase application automatically cancelled the contract. A rider to the contract further provided that in the event of the cancellation of the contract, plaintiff would remain in the apartment until the end of the sublease.
 

 Plaintiff then attempted to present a second candidate for purchase of the apartment, claiming that he had a right to assign his option to purchase the apartment. Plaintiff asserted that having exercised the option, he continued to have the right to purchase the apartment and propose other occupants. Defendants countered that the option had been converted into a contract of sale that was cancelled by the board’s refusal to approve the contract.
 

 
 *668
 
 Plaintiff commenced this action for specific performance alleging breach of contract, and tortious interference with prospective business and contractual relations. Both sides moved for summary judgment. Supreme Court granted defendants’ motion, and dismissed the complaint. The court held that none of the documents granted any continuing right to plaintiff to purchase the apartment after the cooperative board’s rejection. Moreover, the court determined that none of the documents established plaintiff’s beneficial interest in defendants’ shares.
 

 The Appellate Division reversed the judgment, granted plaintiff’s cross motion for specific performance and directed defendants to provide plaintiff with an assignable contract of sale. According to the Appellate Division, the failure of the board to grant its approval vitiated the contract of sale, which was nonassignable, but did not invalidate the option contract which remained in effect. We now reverse.
 

 Plaintiff claims that once he exercised his option under the sublease, an assignable “bilateral contract” arose between him and defendants for purchase of the cooperative apartment. While the terms of this bilateral contract were reduced to a writing — the contract of sale — plaintiff contends that the bilateral contract to purchase the apartment nevertheless maintained a separate existence apart from the written agreement. Accordingly, when the cooperative board disapproved of the sale of the apartment to plaintiff resulting in the cancellation of the written contract, the “implied” bilateral contract survived and could be assigned to a third party. We disagree.
 

 “ ‘An option contract is an agreement to hold an offer open; it confers upon the optionee, for consideration paid, the right to purchase at a later date’ ”
 
 (Kaplan v Lippman,
 
 75 NY2d 320, 324, citing
 
 Leonard v Ickovic,
 
 79 AD2d 603,
 
 affd
 
 55 NY2d 727). Once an optionee gives notice of intent to exercise the option in accordance with the agreement, “the unilateral option agreement ripens into a fully enforceable bilateral contract”
 
 (id.,
 
 at 325;
 
 see also,
 
 1 Williston, Contracts § 5:16, at 721 [4th ed]). Both parties here concede that once an option is exercised, the option itself ceases to exist and an enforceable bilateral contract is formed
 
 (see, Ludlam Stead v Rezza,
 
 118 AD2d 628, 629-630). The parties disagree, however, on the effect of their subsequent written contract of sale on the life of the bilateral contract.
 

 In this case, the principal documents before us include the sublease containing the option and the written contract of sale.
 
 *669
 
 Beyond these documents, there is no evidence of a separate bilateral contract. Indeed, it is undisputed that after plaintiff exercised his option, the parties reduced the terms of their agreement to writing and entered into a formal contract of sale which contained a merger clause.
 

 The purpose of a merger clause is to require the full application of the parol evidence rule in order to bar the introduction of extrinsic evidence to alter, vary or contradict the terms of the writing
 
 (Matter of Primex Intl. Corp. v Wal-Mart Stores,
 
 89 NY2d 594, 599). The merger clause accomplishes this purpose by evincing the parties’ intent that the agreement “is to be considered a completely integrated writing”
 
 (id.,
 
 at 600).
 

 Because the terms of the purchase agreement were merged and integrated into the written contract of sale, the bilateral contract to purchase the apartment was terminated when the contract of sale was cancelled. Having memorialized the terms of the bilateral contract in a writing that provided for its cancellation if the cooperative board did not approve the sale, plaintiff cannot now seek recourse based on an agreement that no longer exists.
 

 Moreover, contrary to plaintiff’s contention, there is no evidence in the record that the parties intended the bilateral contract to maintain an existence separate from the sublease. “It is possible to draft the provision so as to give the lessee an option to purchase as an independent contractual right, separable from the lease, but such a provision would be an unusual one”
 
 (Gilbert v Van Kleeck,
 
 284 App Div 611, 616). An option found in a lease generally runs with the land and, absent unequivocal language to the contrary, may not be exercised beyond the lease term if such exercise creates an unreasonable result
 
 (id.,
 
 at 617;
 
 see also, Campos v
 
 7
 
 Hallock Landing Corp.,
 
 166 AD2d 549, 550).
 

 Such is the case here. To permit plaintiff to wield a “phantom” or “shadow” bilateral contract at his whim for an indeterminate time even after the end of the sublease would unreasonably undermine the alienability of defendants’ property and would significantly impede their ability to sublet the apartment to a third party
 
 (see, Symphony Space v Pergola Props.,
 
 88 NY2d 466, 479;
 
 see also, Buffalo Seminary v McCarthy,
 
 86 AD2d 435,
 
 affd for reasons stated
 
 58 NY2d 867).
 

 Accordingly, the Appellate Division order should be reversed, with costs, and the judgment of Supreme Court reinstated.
 

 
 *670
 
 Chief Judge Kaye and Judges Smith, Levine, Ciparick, Rosenblatt and Graffeo concur.
 

 Order reversed, etc.
 

 *
 

 The merger clause provides: “All prior oral or written representations, understandings and agreements had between the Parties with respect to the subject matter of this Contract * * * are merged in this Contract, which alone fully and completely expresses their agreement.”