Safariland, LLC v H.B.A. Agencies, Ltd. (2021 NY Slip Op 05679)





Safariland, LLC v H.B.A. Agencies, Ltd.


2021 NY Slip Op 05679


Decided on October 19, 2021


Appellate Division, First Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered: October 19, 2021

Before: Acosta, P.J., Singh, Kennedy, Mendez, Higgitt, JJ. 


Index No. 657434/19 Appeal No. 14224 Case No. 2021-01776 

[*1]Safariland, LLC, Plaintiff-Appellant,
v
H.B.A. Agencies, Ltd., Defendant-Respondent.


Kane Kessler, P.C., New York (Jeffrey H. Daichman of counsel), for appellant.
Smith, Gambrell & Russell, LLP, New York (Daniel S. Goldstein of counsel), for respondent.



Order, Supreme Court, New York County (Laurence L. Love, J.), entered on or about February 18, 2021, which denied plaintiff's motion to dismiss defendant's counterclaims, unanimously modified, on the law, to dismiss defendant's counterclaims for reformation and fraudulent misrepresentation and otherwise affirmed, without costs.
Plaintiff Safariland, LLC, a Delaware limited liability company, specializes in manufacturing and distributing law enforcement, military, and security products. Defendant H.B.A. Agencies, Ltd. (HBA) is an Israeli limited liability company specializing in sales agent services of law enforcement, military, and defense products to the Government of Israel's Ministry of Defense (the MOD).
Around February 2015, Safariland and HBA engaged in discussions for HBA to facilitate sales of Safariland products to the MOD. According to HBA, Safariland agreed that HBA would be compensated in an amount equal to 10% of Safariland's sales generated by HBA to the MOD.
In June 2015, HBA secured an order by the MOD for $902,000 and sought its 10% commission (the June 2015 order). Safariland confirmed, via e-mail, that it was preparing a contract that would set HBA's compensation at 10%.
Safariland ultimately sent HBA a "Consulting Services Agreement" (the CSA), which was executed by both parties. The CSA did not contemplate a 10% commission. Instead, it stated that HBA would provide advisory and consultant services to Safariland in connection with the sale of its products to the MOD from September 1, 2015 to August 31, 2016, in exchange for $90,000 to be paid in monthly installments of $7,500, labeled as a "retainer." The "Scope of Work," as set forth in the CSA, required HBA to "[p]romote and market the Safariland Products and solicit orders from [the MOD]," as well as to provide additional services "in connection with the signing of sales contracts and the performance of such contracts" and further required HBA to provide "support services for the performance of contracts with the [MOD]." The CSA included a "Not to Exceed" provision which stated that "Safariland's maximum obligation for compensation to [HBA] . . . shall not exceed the amount of US $90,000." It also contained a merger and integration clause stating that the CSA was the "sole and entire agreement of the parties with respect to the subject matter contained herein" and "supersedes any prior and contemporaneous understandings and agreements, both written and oral, with respect to such subject matter."
In December 2015, HBA secured an order from MOD of Safariland products in the amount of $2,346,114.48 (the December 2015 order). Unlike the June 2015 order, which was to be delivered within the term of the CSA, this purchase order required that the products be delivered in December 2019 and December 2020, thereby requiring HBA's ongoing service and attention beyond the August 31, 2016 deadline stated in the CSA.
Safariland commenced this action seeking a declaratory [*2]judgment that HBA is not entitled to any additional payment with respect to the December 2015 order. HBA asserted counterclaims for breach of contract (both oral and written), reformation of the CSA, breach of the implied covenant of good faith and fair dealing, fraudulent misrepresentation, compensation under Israeli Agency Contract Law and quasi contract claims for unjust enrichment and quantum meruit. HBA alleged that the CSA was meant to memorialize the 10% payment owed with respect to the June 2015 order, that the CSA does not apply to the December 2015 order and that Safariland confirmed to HBA before and after the execution of the CSA that it would be compensated in an amount of 10% of sales for any additional orders.
Safariland moved to dismiss, arguing that since the December 2015 order was placed during the term of the CSA, the unambiguous merger clause bars review of any extrinsic promises and the CSA utterly refutes HBA's claims that it is entitled to additional payment with respect to that order.
It is true that the parol evidence rule bars review of extrinsic evidence to alter an unambiguous agreement or merger clause (see Jarecki v Shung Moo Louie, 95 NY2d 665, 669 [2001]). However, even an unambiguous merger clause will not preclude evidence of an agreement that is not contemplated by the contract (see Elbroji v 22 E. 54th St. Rest. Corp., 67 AD3d 957 [2d Dept 2009], citingMatter of Primex Intl. Corp. v Wal-Mart Stores, 89 NY2d 594, 601 [1997]).
Here, while the CSA is clear that HBA's payment is limited to the retainer for consulting services performed during the term of the agreement, it is silent on the issue of payment with respect to orders that are placed during the term of the CSA, but for which work is performed after the expiration of the agreement. It is undisputed that HBA continued to perform work to facilitate the performance of the December 2015 order well beyond the expiration of the CSA. Additionally, HBA pleads, which allegations must be afforded the presumption of truth at this stage (Kolchins v Evolution Mkts., Inc., 128 AD3d 47, 57-58 [1st Dept 2015], affd 31 NY3d 100 [2018]), that HBA is entitled to receive 10% of the December 2015 order. Accordingly, at this stage, the CSA does not utterly refute HBA's breach of contract or quasi contract claims, which can be pled in the alternative (see CPLR 3014), with respect to the December 2015 Order (Kolchins v Evolution Mkts., Inc., 128 AD3d at 57-58). HBA fails to state a counterclaim for reformation. The CSA presented a departure from the 10% commission discussion. Therefore, the documentary evidence shows that the CSA was not a mutual or a fraudulently induced unilateral mistake but rather an entirely separate offer, which HBA accepted by signing it (see Greater N.Y. Mut. Ins. Co. v United States Underwriters Ins. Co., 36 AD3d 441, 443 [1st Dept 2007]).
The fraudulent misrepresentation counterclaim must also be dismissed for failure to plead a cause [*3]of action. The statements made prior to September 2015, when the CSA was executed, were promissory future statements that are not actionable (see Adams v Clark, 239 NY 403, 410 [1925]). With respect to statements made after entry into the CSA, HBA failed to plead such statements with particularity as required by CPLR 3016(b) (see Abrahami v UPC Constr. Co., 176 AD2d 180, 180 [1st Dept 1991]).
HBA sufficiently pleaded a counterclaim under Israel Agency Contract Law. While the CSA states that HBA would be considered an independent contractor and not an agent, HBA may be considered an agent under this Israeli law. Furthermore, HBA introduced the MOD to Safariland prior to entry of the CSA and conducted work after the CSA expired.
We have considered the parties' remaining arguments and find them unavailing. 
THIS CONSTITUTES THE DECISION AND ORDER
OF THE SUPREME COURT, APPELLATE DIVISION, FIRST DEPARTMENT.
ENTERED: October 19, 2021