People v Commons W., LLC (2024 NY Slip Op 24316)

[*1]

People v Commons W., LLC

2024 NY Slip Op 24316

Decided on December 11, 2024

Supreme Court, Cortland County

Masler, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the printed Official Reports.

Decided on December 11, 2024
Supreme Court, Cortland County

People of the State of New York by LETITIA JAMES, Attorney General of the State of New York, Petitioner,

against
Commons West, LLC, COLLEGETOWN PLAZA, LLC, CITYVIEW, LLC, COLLEGETOWN CENTER, LLC, COLLEGETOWN COURT, LLC, FANE ENTERPRISES, INC., and JASON H. FANE individually and d/b/a ITHACA RENTING COMPANY, and as the sole member of COMMONS WEST, LLC, COLLEGETOWN PLAZA, LLC, CITYVIEW, LLC, COLLEGETOWN CENTER, LLC and COLLEGETOWN COURT, LLC, and as president, director and shareholder of FANE ENTERPRISES, INC., Respondents.

Index No. EF2022-0558

LETITIA JAMES, 
Attorney General of the State of New York
By: Stephanie M. Milks, Assistant Attorney General
Petitioner
Binghamton Regional Office
44 Hawley Street, 17th Floor
Binghamton, New York 13901
Via NYSCEF
BOND, SCHOENECK & KING, PLLC
By: Curtis A. Johnson, Esq.
Attorneys for Respondents
350 Linden Oaks, Third Floor Rochester, New York 14625
Via NYSCEF

Mark G. Masler, J.

"Executive Law § 296 (5) (a) (1) is unconstitutional to the extent that it makes it an unlawful discriminatory practice to refuse to rent or lease housing accommodations to any person, or group of persons, because their source of income includes Section 8 vouchers" (People v Commons W., LLC, 80 Misc 3d 447, 452 [Sup Ct, Tompkins County 2023]; filed in this action as NY St Cts Elec Filing [NYSCEF] Doc Nos. 64-65, and referred to herein as the prior decision, order, and judgment). The court found the statute unconstitutional to the extent stated on the basis that, by incorporating the provisions of the federal Section 8 Housing Choice Voucher program, it impermissibly requires landlords to consent to warrantless searches of leased premises and the landlord's records in violation of the Fourth Amendment of the US Constitution. Reference should be made to the prior decision, order, and judgment for a detailed statement of the prior procedure, the operative facts — including defined terms used herein — and the court's reasoning in making the prior determination. Petitioner timely filed a notice of appeal and the time to perfect the appeal has been extended several times by order of the Appellate Division, Third Department, most recently to January 23, 2025 (see People v Commons W., LLC, 2024 NY Slip Op 76763[U] [3d Dept 2024]). On June 24, 2024, petitioner moved for leave to renew. Respondents opposed the motion and filed a cross-motion seeking summary judgment on their counterclaims (1) for judgment declaring the statute unconstitutional and (2) for counsel fees. The parties thereafter agreed upon a motion schedule that resulted in oral argument being heard by Microsoft Teams on September 20, 2024.
It is first necessary to address petitioner's erroneous contention that the court determined that Executive Law § 296 (5) (a) (1) (the statute) is unconstitutional on only an as-applied basis. The prior decision, order, and judgment declared the statute unconstitutional based solely upon consideration of the statutory language — including the definition of "lawful source of income" set forth in Executive Law § 292 (36) — without reference to any facts unique to respondents or the application of the statute to them. The statute does not expressly state that landlords must consent in advance to warrantless searches. However, as explained more fully in the prior decision, order, and judgment, by compelling landlords to accept Section 8 vouchers, the statute necessarily incorporates — and mandates compliance with — all provisions and requirements of the otherwise-voluntary Section 8 program. These provisions presently include the requirement that all participating landlords execute a housing assistance payment (HAP) contract giving advance consent for the relevant public housing agency (PHA), the Department of Housing and Urban Development (HUD), and the Comptroller General of the United States (Comptroller General), to have full and free access to the contract unit, the premises of which the contract unit is a part, and all records relevant to the HAP contract. Thus, the statue is facially unconstitutional because it compels a property owner to provide advance consent to such searches in violation of the Fourth Amendment to avoid liability under the statute (see Sokolov v Village of Freeport, 52 NY2d 341, 345-347 [1981]). This constitutional infirmity arises from the language of the statute and applies to all landlords who receive an application from a potential tenant who participates in the Section 8 Housing Choice Voucher program.
Turning to petitioner's motion, a motion for leave to renew must "be based upon new [*2]facts not offered on the prior motion that would change the prior determination or [must] demonstrate that there has been a change in the law that would change the prior determination" (CPLR 2221 [e] [2]). In support of the motion, petitioner submitted a policy issued by New York State Homes and Community Renewal (HCR) on March 26, 2024 — nine months after the prior decision, order, and judgment was issued — which applies only to administration of the Section 8 program in Tompkins County by HCR or a local administrator (LA) designated by HCR (NYSCEF Doc No. 74, herein the HCR policy or policy). Petitioner contends that the policy represents a change in the law that would change the court's prior determination because it administratively eliminates the prospect of warrantless searches by requiring, in relevant part, that landlords provide written notice of any objection to warrantless searches prior to executing a HAP contract and that HCR or its LA obtain an administrative warrant to conduct any inspection of premises or records of a landlord who has provided such advance objection to warrantless searches.
Respondents oppose the motion, in part, on the basis that the policy is a nullity because it was not properly adopted in compliance with the State Administrative Procedure Act (SAPA). Petitioner concedes that the policy was not promulgated in accordance with SAPA, but argues that SAPA is inapplicable because the policy is not a rule as defined by SAPA or, alternatively, is excluded from the definition of rule as an administrative policy, or as a policy that governs only internal affairs of HCR that does not affect the rights of the public.[FN1]
Initially, it bears noting that petitioner's contention that the HCR policy is a change in the law that warrants granting of the renewal motion cannot be reconciled with the argument that SAPA does not apply because the policy has no legal effect. In relevant part, the SAPA initially defines a rule as "the whole or part of each agency statement, regulation or code of general applicability that implements or applies law" unless it falls within one of the subsequent enumerated exclusions (State Administrative Procedure Act § 102 [2] [a] [i], [b]). The policy plainly falls within the initial definition of a rule because it addresses implementation and application of law — the provisions of the Section 8 program and the statute — generally to all landlords within Tompkins County that are subject to regulation by HCR or its designated LA (see e.g. Matter of HD Servs., LLC v New York State Comptroller, 51 AD3d 1236, 1237-1238 [3d Dept 2008]). 
Petitioner further argues that the policy nonetheless falls within two of the enumerated exclusions from the definition of rule. This contention is likewise unavailing. Petitioner first relies upon the exclusion from the definition for "interpretive statements and statements of general policy which in themselves have no legal effect but are merely explanatory" (State Administrative Procedure Act § 102 [2] [b] [iv]). The primary difference between a rule and an interpretive statement "is that the former set[s] standards that substantially alter or . . . can determine the result of future agency [action] while the latter simply provide[s] additional detail and clarification as to how such standards are met by the public and upheld by the agency" (Matter of North Shore Hematology-Oncology Assoc., P.C. v New York State Dept. of Health, -AD3d -, -, 2024 NY Slip Op 05165, *2 [3d Dept 2024] [internal quotation marks and [*3]citations omitted]).
By its own terms, the policy has legal effect because it imposes new obligations, that is new standards, and legal consequences on landlords that are not imposed by the statute or by the federal law or regulations governing the Section 8 program. Specifically, the policy imposes a new obligation by requiring that landlords who refuse to enter into a HAP contract "be given the opportunity" to provide a written statement in a prescribed form refusing to consent to warrantless searches (HCR policy at 1, exhibit A). Notably, the policy also imposes an additional legal consequence by providing that landlords that execute a HAP contract without first notifying HCR or the LA of their refusal to consent to warrantless searches will be foreclosed from thereafter asserting any objection to warrantless inspections. "Instead, the owner will be required to abide by all the terms of the HAP contract, including the terms permitting inspections of their property and books and records" (HCR policy at 2).
The policy also imposes additional legal consequences by creating at least two new grounds not present in the statute for establishing that a landlord engaged in a prohibited discriminatory practice. First, it provides that "[a] refusal to provide such written statement may be considered discrimination under New York State's Human Rights law [sic] and any other applicable local laws prohibiting discrimination on the basis of source of income" (HCR policy at 2), thereby making the mere refusal to provide a statement that is not mandated by the statute or federal law a discriminatory act. Further, the policy also provides that the rental of an apartment to another applicant during the period when HCR or its LA is seeking an administrative warrant to conduct an initial inspection — which the landlord may not be aware is happening — "may be construed as evidence of discrimination based on source of income" (HCR policy at 2). These provisions amply demonstrate that the policy goes far beyond merely providing clarification because it imposes new obligations and consequences which have legal effect on landlords beyond the statute.
Petitioner further argues that the policy falls with the exclusion for "rules concerning the internal management of the agency which do not directly and significantly affect the rights of or procedures or practices available to the public" (State Administrative Procedure Act § 102 [2] [b] [i]). The policy likewise falls outside of this exclusion because it does not address the internal management of HCR, but only directly purports to provide the procedures and practices available to landlords, as members of the public, for asserting their Fourth Amendment rights. Accordingly, the policy is a rule subject to SAPA and, therefore, is void due to HRC's failure to comply with SAPA in promulgating the policy (see e.g. Matter of New York State Bd. of Regents v State Univ. of NY, 178 AD3d 11, 21 [3d Dept 2019], lv denied 35 NY3d 912 [2020])
This determination that the policy is void means that it may not be considered a change in the law that would have changed the prior determination. Petitioner's failure to establish a valid change in the law is alone a sufficient basis for denying the motion to renew. Nonetheless, whether the policy would have changed the prior determination had it been duly promulgated merits further consideration due to the significant interests at stake, namely, the State's interest in prohibiting discrimination in housing and the right of landlords, including respondents, under the Fourth Amendment to be free from unreasonable searches. In this regard, there are numerous reasons why the policy, had it been duly promulgated in accordance with SAPA, would not have changed the prior determination.
First, the policy is preempted by federal law. The policy states that, upon receipt of a landlord's written notice of refusal to enter into a HAP contract, "HCR or the LA will require the [*4]owner to sign the HAP contract, in accordance with the Section 8 program requirements" (HCR policy at 2). Thus, the policy does not relieve landlords from being required to execute a HAP contract in which they provide advance consent to warrantless inspections of their real property and records. Indeed, even petitioner concedes that "respondents are correct that HCR's policy 'does not, and cannot, modify the terms of the HAP contract or relieve landlords of their obligation to execute a HAP contract' " (NYSCEF Doc No. 76, petitioner's mem in supp, at 17 [emphasis added]), effectively conceding that the HCR policy is preempted by federal law. In this regard, it bears noting that the HUD regulations pertaining to the Housing Choice Voucher program provide that "[n]othing [herein] is intended to pre-empt operation of State and local laws that prohibit discrimination against a Section 8 voucher-holder because of status as a Section 8 voucher-holder. However, such State and local laws shall not change or affect any requirement of this part, or any other HUD requirements for administration or operation of the program" (24 CFR 982.53 [d] [emphasis added]).
Moreover, as a purely practical consideration, the policy contains several flaws that prevent it from protecting respondents from being compelled to waive their Fourth Amendment rights. Under well-established principles of contract interpretation, upon signing the HAP contract a landlord would be foreclosed from seeking to enforce the procedure specified in the HCR policy against the PHA because the HAP contract includes a merger clause stating that it "contains the entire agreement between the owner and the PHA" (NYSCEF Doc No. 88, HAP contract, part B, § 17 [a]).[FN2]
The merger clause requires the full application of the parole evidence rule to bar extrinsic evidence that alters, varies, or contradicts the terms of the contract (see Jarecki v Shung Moo Louie, 95 NY2d 665, 669 [2001]). The merger clause thus precludes a landlord from claiming that the policy alters the express contractual provision entitling the PHA, which is a party to the contract, to conduct warrantless searches (see Hobler v Hussain, 111 AD3d 1006, 1007 [3d Dept 2013]).
Further, even if the policy's requirement that a warrant be obtained when a landlord advises of its objection to warrantless searches prior to execution of the HAP contract was sufficient to overcome the clear grant of consent for such searches in the HAP contract, it does not apply to every agency authorized by the HAP contract to conduct searches in New York State — or even to all such agencies in Tompkins County. In this regard, petitioner acknowledges that the Ithaca Housing Authority also administers Section 8 vouchers in Tompkins County but is not subject to HCR's policy purporting to prohibit nonconsensual warrantless searches (petitioner's mem in supp at 15). Nor does the policy bar HUD and the Comptroller General from making warrantless inspections based on the consent granted in the HAP contract. Indeed, it bears emphasizing that the HAP contract contains a provision expressly providing HUD and the Comptroller General with "full and free access to the contract unit and the premises, and to all accounts and other records of the owner that are relevant to the HAP contract," which includes access to "any computers, equipment or facilities containing such records" (HAP contract, part B § 11 [emphasis added]). This grant of unfettered access to federal agencies by the HAP contract, which is mandated by federal law, is not affected by HCR's policy, [*5]notwithstanding petitioner's speculative assertion that HUD and the Comptroller General are unlikely to inspect either a rental property or a landlord's records. The fact remains that a landlord who is forced by the statute to participate in the Section 8 program would be compelled by the provisions of federal law to execute a HAP contract providing advance consent for nonconsensual searches by HUD and the Comptroller General, and by all PHAs and LAs except those subject to the HCR policy, and this infirmity renders the statute facially unconstitutional regardless of whether any of the agencies might conduct such inspections in the future.
Finally, as noted above, the court previously determined that the statute is facially unconstitutional to the extent stated. The HCR policy, which does not — and cannot — modify the relevant provisions of federal law but only places voluntary and unenforceable limits on the authority of HCR and its LAs to conduct warrantless searches, and only for a limited number of landlords in Tompkins County, does nothing to cure the facial invalidity of the statute. Petitioner's attempt to evade the facial invalidity of the statue by relying on a policy that she concedes does not foreclose all constitutional violations and which does not apply to all agencies authorized to conduct searches under HAP contracts executed in New York evinces a view of the constitution as an inconvenient impediment to the goals of the statute. This view was further apparent from the comments of counsel at oral argument, who characterized respondents' assertion of their constitutional rights as mere nitpicking, or procedural arguments.
The US Constitution may not so easily be disregarded. It is "the supreme Law of the Land; and the Judges in every State shall be bound thereby, any Thing in the Constitution or Laws of any State to the Contrary notwithstanding" (US Const, art VI, cl 2). It establishes the very structure of our nation as a constitutional federal republic and expressly protects the rights of its individual citizens that are enshrined in the Bill of Rights, including the Fourth Amendment right to be free from unreasonable searches and seizures. The means of achieving any policy goal through law, no matter how laudable, must comply with the Constitution. Curing the facial invalidity of the statute to accommodate the policy goal of preventing source of income discrimination based on a tenant's receipt of Section 8 assistance while respecting the Constitution could be achieved by amending the federal regulations to change how the HAP contract regulates inspection of covered premises and associated business records by replacing the requirement that landlords provide advance consent for all such searches with a requirement that all searches or inspections occur only with the consent of the landlord or pursuant to a valid search warrant. As implicitly noted in the prior decision, order, and judgment (see People v Commons W., LLC, 80 Misc 3d at 451, n 4) and by petitioner (see petitioner's mem in supp, at 11), this is the very solution that developed in the wake of Sokolov to allow for legislation advancing various legislative policy goals without violating the Fourth Amendment (see e.g. Pashcow v Town of Babylon, 53 NY2d 687, 688 [1981]). In this regard, it bears repeating that the HCR policy does not require that a warrant be obtained in all circumstances in which a landlord might object to a search as required to make the statute facially constitutional in accordance with doctrine established by Pashcow v Town of Babylon.
Petitioner's remaining contentions in support of the motion for leave to renew have been considered and found to lack merit. Accordingly, petitioner's motion for leave to renew is denied. Petitioner also argued, alternatively, that the court should exercise its inherent authority to vacate the prior decision, order, and judgment in the interest of substantial justice (petitioner's mem in supp at 19-20); however, this relief was not requested in the notice of motion. Nonetheless, upon consideration of the foregoing factors, the request is hereby denied on the [*6]merits.
Respondents cross-moved for, among other things, summary judgment on their counterclaim for declaratory judgment that the statute is facially unconstitutional. This relief was granted in the prior decision, order, and judgment. Nonetheless, to eliminate any uncertainty, respondents' cross-motion is granted, and it is hereby once again adjudged and declared that Executive Law § 296 (5) (a) (1) is facially unconstitutional to the extent that it makes it an unlawful discriminatory practice to refuse to rent or lease housing accommodations to any person, or group of persons, because their source of income includes Section 8 vouchers.
Respondents also cross-moved for summary judgment on their counterclaim seeking an award of counsel fees, originally pursuant to Civil Rights Law § 70-a (1) (a), which permits the award of attorneys' fees to a party that obtains dismissal of a strategic lawsuit against public participation (SLAPP) suit. Petitioner opposed respondents' counterclaim for an award of attorneys' fees pursuant to Civil Rights Law § 70-a (the anti-SLAPP statute), in part, by asserting that such claims are categorically barred by the doctrine of sovereign immunity which precludes suits against the State without its consent. In further support of this argument, petitioner identified CPLR 8601 as an example of the Legislature waiving sovereign immunity by expressly authorizing the award of legal fees to a party who prevails in an action or proceeding against the State (NYSCEF Doc No. 91, petitioner's reply mem, at 16). In reply, respondents asserted CPLR 8601 as an additional basis for an award of counsel fees.
CPLR 8601 provides as follows:
"In addition to costs, disbursements and additional allowances awarded pursuant to sections eight thousand two hundred one through eight thousand two hundred four and eight thousand three hundred one through eight thousand three hundred three of this chapter, and except as otherwise specifically provided by statute, a court shall award to a prevailing party, other than the state, fees and other expenses incurred by such party in any civil action brought against the state, unless the court finds that the position of the state was substantially justified or that special circumstances make an award unjust. Whether the position of the state was substantially justified shall be determined solely on the basis of the record before the agency or official whose act, acts, or failure to act gave rise to the civil action. Fees shall be determined pursuant to prevailing market rates for the kind and quality of the services furnished, except that fees and expenses may not be awarded to a party for any portion of the litigation in which the party has unreasonably protracted the proceedings" (CPLR 8601 [a]).
Respondents are prevailing parties because they obtained judgment on their counterclaim declaring the statute unconstitutional to the extent that it makes it an unlawful discriminatory practice to refuse to rent or lease housing accommodations to any person, or group of persons, because their source of income includes Section 8 vouchers (see Matter of New York State Clinical Lab. Assn. v Kaladjian, 85 NY2d 346, 355 [1995]). Thus, CPLR 8601 mandates an award of legal fees to respondents unless petitioner's position was substantially justified on the circumstances that existed when this proceeding was commenced.
"Substantially justified" means "justified to a degree that could satisfy a reasonable person or having a reasonable basis both in law and fact[. . . .] The determination of whether the State was substantially justified is committed to the sound discretion of the court of first instance and is reviewable as an exercise of judicial discretion" (Matter of Centennial Restorations Co. v [*7]Abrams, 202 AD2d 721, 722 [3d Dept 1994] [internal quotation marks, brackets, emphasis, and citations omitted], lv dismissed 83 NY2d 952 [1994]; accord Matter of New York State Clinical Lab. Assn. v Kaladjian, 85 NY2d at 357). Respondents contend that petitioner was not substantially justified in commencing this proceeding because they had previously advised her office of their contention that the statute violated the Fourth Amendment for the reasons specified in Sokoloff. 
As noted in the prior decision, order, and judgment, prior to the commencement of this proceeding, the Appellate Division had held that similar source of income antidiscrimination statutes adopted by municipalities prior to the April 2019 amendment to the Human Rights Law at issue in this proceeding required landlords to accept Section 8 vouchers (see People v Commons W., LLC, 80 Misc 3d at 450, citing Matter of People v Ivybrooke Equity Enters., LLC, 175 AD3d 1000, 1003 [4th Dept 2019]; Kosoglyadov v 3130 Brighton Seventh, LLC, 54 AD3d 822, 824 [2d Dept 2008]). Further, as also noted in the prior decision, order, and judgment, although the Court of Appeals had held that Section 8 does not preempt state laws which provide tenants with additional protections, respondents' argument that the statute at issue in this proceeding is unconstitutional because it compels landlords to waive their Fourth Amendment rights presented an issue of first impression (see People v Commons W., LLC, 80 Misc 3d at 450-451, citing Rosario v Diagonal Realty, LLC, 8 NY3d 755, 762-764 [2007], cert denied 552 US 1141 [2008]; Matter of People v Ivybrooke Equity Enters., LLC, 175 AD3d at 1002). Although petitioner did not ultimately prevail on the merits, the state of existing law and petitioner's duty to defend the constitutionality of the statute as a "law that was passed by the State Legislature and signed by the Governor" to advance the goal of eliminating discrimination in the rental of residential property provided petitioner with substantial justification for commencing this proceeding (City of New York v State of New York, 94 NY2d 577, 599 [2000]). Simply put, petitioner was not required to accept respondents' statement of the law on a substantial issue of first impression without obtaining a determination from the courts. Accordingly, respondents are not entitled to an award of attorneys' fees pursuant to CPLR 8601 because petitioner had a substantial justification for commencing this proceeding.
The determination that petitioner had a substantial justification for commencing this proceeding also precludes an award of legal fees under the anti-SLAPP statue, which provides that costs and attorneys' fees may be awarded upon a demonstration that an "action involving public petition and participation was commenced or continued without a substantial basis in fact and law and could not be supported by a substantial argument for the extension, modification or reversal of existing law" (Civil Rights Law § 70-a [1] [a]). This conclusion renders academic the parties' remaining arguments regarding whether respondents may be awarded legal fees pursuant to the anti-SLAPP statute. Accordingly, respondents' cross-motion seeking an award of attorneys' fees is denied.
This decision constitutes the order and judgment of the court. The filing of this decision, order, and judgment, or transmittal of copies hereof, by the court shall not constitute notice of 
entry (see e.g. CPLR 2221 [d] [3]; 5513). The prevailing party shall serve notice of entry hereof as required by CPLR 2220 (b) and Uniform Rules for Trial Courts (22 NYCRR) § 202.5-b (h) (2).
Dated: December 11, 2024
Cortland, New York
ENTER
____________________________________
HON. MARK G. MASLER
Supreme Court Justice
The following documents filed with the Clerk of the County of Tompkins via New York State Courts Electronic Filing System were considered herein (see CPLR 2219 [a]):
Document Numbers 64-65 (and all documents considered therein); 66-67; 70-102.

Footnotes

Footnote 1:Petitioner's argument that SAPA does not apply because HCR adopted the policy, not as a state agency, but in its capacity as a PHA administering the federal Section 8 program is unavailing because HCR is a state agency and acted as such when it attempted to adopt a state policy that differs from federal law and regulations governing the program which it is bound to follow.

Footnote 2:The HAP contract was revised during the pendency of this proceeding; however, the language relevant to the determinations made herein and in the prior decision, order, and judgment was not changed (compare NYSCEF Doc No. 32, with NYSCEF Doc No. 88).